IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-3256
_____

JAQUELINE B. BRUNEAU,

                              Plaintiff-Appellant,
                              Cross-Appellees,

          versus

FEDERAL DEPOSIT INSURANCE CORPORATION,
As Receiver for Bankers Trust, N/A., ET AL.,

                              Defendant-Appellees.

ROB A. HARDESTY, ROBERT L. KAREM,
RAYMOND A. LAPINO, SR., and MYRON E. MOOREHEAD,

                              Defendants-Appellees,
                              Cross-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

(November 12, 1992)

Before KING, DAVIS, and WIENER, Circuit Judges.

PER CURIAM:

     In this appeal from the district court's grant of summary

judgment in favor of Defendant-Appellee Federal Deposit Insurance

Corporation (FDIC), Plaintiff-Appellant Jacqueline B. Bruneau

asserts that the district court misapplied the law of constructive

trust, the holding in Downriver Community Federal Credit Union v.

Penn Square Bank,[1] and the D'Oench, Duhme doctrine.[2]  As we find the district court's decision to be free of reversible error, we affirm.


I

FACTS AND PROCEDURAL HISTORY

In early December 1988, Bruneau opened three accounts at Bankers Trust of Louisiana (Bankers Trust) and made deposits into all three totalling of $223,125.76.  Bruneau asserts that an employee of the bank represented that the three accounts would be insured up to $100,000 each by the FDIC, and that Bruneau thus believed that all of her money was insured.[3]  For purposes of this review, we assume the truth of those representations by Bruneau.

In early March 1989, the Comptroller of Currency declared Bankers Trust insolvent and terminated its existence as a national banking association.[4]  The Comptroller appointed the FDIC as receiver of Bankers Trust.

Bruneau filed a claim for recovery of her deposits with the FDIC.  The FDIC paid Bruneau $100,000 and issued her a Receivers

---

[1]879 F.2d 754 (10th Cir. 1989), cert. denied, 493 U.S. 1070 (1990).

[2]See D'Oench, Duhme & Co. v. Federal Deposit Ins. Co., 315 U.S. 447, 460 (1942).

[3]This was clearly incorrect.  12 C.F.R. § 330.5 (1989) provides:  "Funds owned by natural persons and deposited in one or more deposit accounts in his or her own name shall be added together and insured up to $100,000 in the aggregate."

[4]See 12 U.S.C. § 191 (1988).

2

Certificate for the additional $123,473.53, entitling her to a ratable distribution along with other uninsured depositors and general creditors. Since obtaining the Receivers Certificate, Bruneau has received a number of payments from the FDIC. When the district court rendered its decision in the instant case, these payments totaled $59,817.82. The FDIC asserts that four more payments))totaling $12,936.26))were made after the court's last calculation date and were thus not included in the $59,817.82 amount.

Unhappy with her share of the proceeds of the bank distribution under the National Banking Act, Bruneau sued the FDIC and several former officers and employees of the bank (Hardesty et al.), who she alleged made the misrepresentations to her. Bruneau claimed that the FDIC, by its predecessors, had breached its fiduciary duty to her, had violated Louisiana statutory law, had committed "concerted tort action" with some of the employees of the bank, and had effectively created a constructive trust in her favor.

The district court granted summary judgment in favor of the FDIC. The court reasoned that the Bruneau's constructive trust theory did not constitute a viable claim for a number of reasons. One of those reasons was that the claims were barred by the D'Oench, Duhme doctrine. The court held that Bruneau's other claims were barred by the D'Oench, Duhme doctrine and § 1823(e) of FIRREA.[5] Bruneau timely appealed.

---

[5]12 U.S.C. § 1823.

ANALYSIS

A.  Bruneau's Claims

    1.  Effect of D'Oench, Duhme

The district court relied on several theories in rejecting all of Bruneau's claims.  One of the theories properly espoused by the district court here is that Bruneau's claims are barred by the D'Oench, Duhme doctrine.  The district court found correctly that all of the claims are based on bank personnel's misrepresentations and fraudulent acts, all of which, for purposes of this appeal, we assume to have occurred.  Under D'Oench, Duhme and its statutory counterpart, a claimant against the FDIC must produce evidence that the agreement made with the bank meets all of the FIRREA requirements.[6]  As the district court found, none of these requirements were met by Bruneau.  The agreement was not in

---

[6]The relevant portion of FIRREA provides:
No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11 [12 U.S.C.S. § 1821], either as a security for a loan or by purchase or as a receiver of any insured depository institution, shall be valid against the Corporation unless such agreement))
    (1) is in writing,
    (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
    (3) was approved by the board of directors of the depository institution or its loan committee, . . . and
    (4) has been, continuously, from the time of its execution, an official record of the depository institution.
12 U.S.C.S. § 1823(e) (Supp. 1992).

writing; it was <u>not</u> executed by the depository institution contemporaneously with the acquisition of the asset; it did <u>not</u> have the required approval of bank executives; and it was <u>not</u> continuously held as an official bank record.

Bruneau asserts in her brief to this court that "<u>D'Oench, Duhme</u> is not apposite. Ms. Bruneau is not basing her claim for recovery on the ground of a secret or side agreement, but rather on the ground that this transaction never could occur because the bank was prohibited from taking funds, thereby making this transaction void from the beginning."[7] Bruneau badly mischaracterizes her position. Her entire case rests on the theory that the officers of the bank committed a fraud by allowing her to deposit money when they knew the bank was insolvent. The <u>D'Oench, Duhme</u> doctrine and § 1823(e) are directly implicated by a fraud accusation. Without meeting the requirements of either, Bruneau's claims are barred.

2. Hopeless Insolvency

Bruneau's other argument involves the hopelessly outdated "hopeless insolvency" doctrine, which was recently discussed in dicta of the Tenth Circuit in the <u>Downriver</u> decision.[8] The district court's opinion ably explains the effect of the hopeless insolvency doctrine, the dicta in the <u>Downriver</u> decision, and

---

[7]We, like the district court before us, will ignore the gaping hole in Bruneau's logic that if there was no deposit ("th[e] transaction never could occur"), the FDIC would be responsible for <u>nothing</u> because its liability is triggered only by deposits.

[8]879 F.2d at 761-63.

everything else relative to this essentially frivolous ground of appeal. We refuse to expend any more judicial resources trying to convince counsel that this turn-of-the-century doctrine has long since ceased to have any contextual relevance in light of the banking reforms that have occurred in this country during the past sixty years.

B.  The Cross-Appeal of Hardesty et al.

After the dismissing the FDIC with prejudice, the district court turned to the state law claims that had been filed by Bruneau against Hardesty et al.  As to these claims, the court stated:

> The remaining claims are for "intentional misrepresentation" (First Claim), "negligent misrepresentation" (Second Claim), "breach of fiduciary duty" (Fourth Claim), "violation of Louisiana Revised Statutes" (Fifth Claim), [and] "concerted tort action" (Sixth Claim). Each is based in Louisiana law, albeit as to the fifth claim, some of the defendants have filed a motion based on preemption of state law.

The court then held that it was without subject matter jurisdiction and declined to exercise pendant jurisdiction over the remaining parties. It then dismissed Bruneau's claims against Hardesty et al. without prejudice.

Seeking to change the dismissal from one without prejudice to one with prejudice, Hardesty et al. assert on appeal that the district court erred in dismissing their claims for lack of subject matter jurisdiction. They ground their appeal on the theory that the Louisiana statute involved in Bruneau's charge of "violation of

Louisiana Revised Statutes"[9] is preempted by federal banking law and that the preemption in and of itself supports federal question jurisdiction. Alternatively, they argue that the district court should have addressed the state law claims under its pendant jurisdiction. We dismiss out-of-hand the assertion that the district court abused its discretion in not exercising pendant jurisdiction over the state law claims.

It is clear from the opinion of the district court that it dismissed Bruneau's claims against Hardesty et al. without considering the claim of federal question jurisdiction arising from the preemption of state law. This refusal to consider the claim does not place the issue beyond our review, however, as the preemption question is a matter of law that we would review de novo if it had been fully considered by the district court.

Federal preemption most often appears as a defense to a plaintiff's claim. Thus, the "federal issue does not appear on the face of the plaintiff's complaint."[10] Consequently, "a preemption defense cannot be the basis of the original federal jurisdiction."[11]

As noted by the Seventh Circuit, the Supreme Court has fashioned a narrow exception to this rule. The preemption defense can "be the basis of the original federal jurisdiction" when

---

[9]LA. REV. STAT. ANN. § 6:419 (West 1986 & Supp. 1992).

[10]Lister v. Stark, 890 F.2d 941, 943 (7th Cir. 1989), cert. denied, 111 S. Ct. 579 (1990).

[11]Id. (discussing jurisdiction sufficient to make removal proper)(citing Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987)); see Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1908).

7

Congress has completely preempted a given area of state law. This "complete preemption" exception permits recharacterization of a plaintiff's state-law claim to a federal claim . . . .[12]

Hardesty et al. thus assert that § 6:419 of the Louisiana Revised Statutes has been preempted by federal banking regulations to the point that the asserted violation of that statute is no more than a federal claim masquerading as a state claim. We disagree.

In Metropolitan Life Ins. Co. v. Taylor,[13] the Supreme Court found that "ERISA's preemption provision is . . . so strong that every claim for benefits under a covered plan is regarded as arising under the laws of the United States."[14] Similarly, "[i]t has long been recognized that section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, has such preemptive force."[15] To determine whether the statute has such preemptive force, there must be evidence of "'the clearly manifested intent of Congress'" that such preemption occur.[16]

In the instant case, no evidence of congressional intent to preempt the area of law so pervasively has been presented to this court. Instead, Hardesty et al. have thoroughly convinced us that a defense of preemption exists in this context. They point to a case from the Eastern District of Louisiana involving the same bank

---

[12]Id.

[13]481 U.S. at 63.

[14]Trans World Airlines, Inc. v. Mattox, 897 F.2d 773, 787 (5th Cir.), cert. denied, 111 S. Ct. 308 (1990).

[15]Id.

[16]Id. (quoting Taylor, 481 U.S. at 67).

8

failure and the same defendants as the instant case, in which they successfully used preemption as a defense to similar claims.[17] Hardesty et al. now assert that "[t]he precise issue now before the court has already been resolved in favor of defendants/cross appellants" in the <u>Mortgage Market</u> case. Clearly, Hardesty et al. misapprehends the distinction between that which was decided in <u>Mortgage Market</u> and that which they presently urge to us.

In <u>Mortgage Market</u>, the district court held that "federal law pre-empts [sic] application of La.Rev.Stat. § 6:419 or state fiduciary law which would hold Hardesty, et al [sic] liable for the uninsured portion of [the plaintiff]'s certificate of deposit."[18] As irrefutable a proposition of law as that may be, it is entirely different from the present assertion by Hardesty et al. that federal law is so strongly preemptive in this area of the law that plaintiff's claim "is regarded as arising under the laws of the United States."[19] Hardesty et al. cites nothing to this court (and our research reveals nothing) to indicate that Congress intended to "treat a complaint raising [these matters] as 'necessarily federal in character'"[20] Simply put, Hardesty et al.'s demonstration that the defense of preemption applies does not create a basis for subject matter jurisdiction in the same manner as does "super-

---

[17]<u>Mortgage Mkt., Inc. v. Federal Deposit Ins. Corp.</u>, 780 F. Supp. 406, 407-08 (E.D. La. 1991).

[18]780 F. Supp. at 408.

[19]<u>Trans World Airlines</u>, 897 F.2d at 787.

[20]<u>Id</u>. (citing <u>Taylor</u>, 481 U.S. at 63-64).

preemption" of an ERISA provision or section 301 of the LMRA. Hardesty et al. thus fail to convince us that such "super-preemption" exists here.

Hardesty et al.'s claims may well have merit; they have merely been asserted in the wrong place. The district court dismissed the claims against Hardesty et al. without prejudice. Even though the federal preemption cannot sustain federal subject matter jurisdiction, it may be asserted in an effort to fend off any state court claims against these defendants.

## III

## CONCLUSION

We are not impressed with Bruneau's assertions of error by the district court. Unavoidably, the D'Oench, Duhme doctrine bars the claims asserted by Bruneau against the FDIC. The district court's analysis of the "hopeless insolvency" doctrine and the dicta found in the Downriver decision to the instant case was correct. And the district court did not abuse its discretion in refusing to exercise pendant jurisdiction over the state law claims against Hardesty et al. The district court's judgment is thus
AFFIRMED.